UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

In re                                          :

CRABTREE & EVELYN, LTD.,                        :

           Debtor.                        :

                                                 :

                                                 :

                                                 :

                                                 :

Chapter 11

Case No. 09-14267 (BRL)

---------------------------------------------------------------- x

### FINAL ORDER (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (II) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION LENDER

       This matter is before the Court on the motion filed by Crabtree & Evelyn, Ltd., as debtor and debtor in possession (the "Debtor" or "Crabtree"),[1] in the above captioned chapter 11 case dated July 1, 2009 (the "Motion") requesting entry of a Final Order:[2]

       (1)      authorizing and approving, pursuant to sections 105, 361, 362, and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for Crabtree to obtain postpetition financing up to the principal amount of $40,000,000 (which request has been subsequently reduced by the Debtor to $26,300,000) (the "DIP Facility") from Kuala Lumpur Kepong Berhad, a Malaysian corporation ("KLK" or the "DIP Lender") to (A) fund, among other

---

[1]      The last four digits of the Debtor's federal tax identification number are 1685.

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Agreement.

things, ongoing working capital, general corporate, letters of credit and other financing needs of the Debtor, (B) pay certain costs and expenses of administration of the chapter 11 case, (C) provide the DIP Lender with Adequate Protection (as defined below), and (D) pay fees and expenses (including, without limitation, reasonable attorneys' fees and expenses) owed to the DIP Lender under the DIP Facility;

(2)    authorizing and empowering Crabtree to execute and enter into the DIP Facility and to perform such other and further acts as may be required in connection with the DIP Facility;

(3)    requesting, pursuant to section 364(c) and (d) of the Bankruptcy Code, that the financing under the DIP Facility:

a.    have priority over any and all administrative expenses, including, without limitation, the kind specified in sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other consensual or non-consensual lien, levy or attachment, whether incurred in the chapter 11 case or any successor case, which allowed super-priority claims of the DIP Lender shall be payable from and have recourse to all prepetition and postpetition property of the Debtor (excluding any Avoidance Actions and proceeds thereof, but including claims arising under section 549 of the Bankruptcy Code and proceeds thereof), except for the Carve-Out (as defined below), as provided for herein (the "DIP Facility Superpriority Claim"); and

b.    be deemed immediately secured by valid, binding, continuing, enforceable, fully perfected and unavoidable first priority senior priming security interests in, and liens upon, all prepetition and postpetition assets[3] of the Debtor, whether now existing or hereafter acquired, and a junior priority security interest in all assets (collectively, the "DIP Liens"), and to

---

[3]    To be clear, the DIP Liens shall include a lien on the proceeds of the Debtor's leasehold interests, but not the leaseholds themselves.

the extent not otherwise included, all proceeds, tort claims, insurance claims, and other rights to payments not otherwise included in the foregoing and products of the foregoing and all accessions to, substitutions and replacements for, and rents and profits of, each of the foregoing (excluding any Avoidance Actions and proceeds thereof, but including claims arising under section 549 of the Bankruptcy Code and proceeds thereof) (collectively, the "Collateral"), as provided for by section 364(c) and (d) of the Bankruptcy Code subject only to the Carve-Out as provided for herein;

(4)     seeking the Court's authorization pursuant to sections 361(a), 363(c), and 364(d)(1) of the Bankruptcy Code to authorize use of Cash Collateral (as defined under section 363 of the Bankruptcy Code) and provide adequate protection to the Prepetition Lender on account of its claims under the Prepetition Note, from such use of Cash Collateral and the terms of the financing being granted herein;

(5)     requesting, pursuant to Bankruptcy Rule 4001, that this Court approve (a) the DIP Facility as set forth in the DIP Agreement and payment in full in cash of the remaining indebtedness outstanding under the Prepetition Note and (b) the grant of adequate protection to the Prepetition Lenders all on a final basis (the "Final Order"), as set forth in the Motion.

Pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1), due and sufficient notice under the circumstances of the Motion and the Final Hearing having been provided by the Debtor as set forth in paragraph H below, and the Final Hearing having been held on July 29, 2009, and upon consideration of all the pleadings, allegations and assertions filed with this Court; and upon the record made by the Debtor at the Interim and Final Hearings and the Declaration of Stephen Bestwick Pursuant to Local Bankruptcy Rule 1007-2, and after due deliberation and consideration and good and sufficient cause appearing therefor;

IT IS HEREBY FOUND:

A.     On July 1, 2009 (the "Petition Date"), the Debtor commenced in this Court a case under chapter 11 of the Bankruptcy Code. The Debtor is continuing to operate its

businesses and manage its properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.     An official committee of unsecured creditors of the Debtor (the "Committee") was appointed by the Office of the United States Trustee on July 10, 2009, as amended on July 14, 2009.

C.     No request for the appointment of a trustee or examiner has been made in this case. No committees have been appointed or designated.

D.     This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

E.     Without prejudice to the rights of any non-debtor party in interest as provided in paragraph 6 herein, the Debtor acknowledges, agrees and stipulates that:

(i)     Pursuant to that certain Grid Note dated April 6, 2009 (the "Prepetition Note"), in favor of KLK Overseas Investments Ltd. ("KLKOI" or, solely with respect to the Prepetition Note, "Prepetition Lender"),[4] a British Virgin Islands based investment holding company, KLKOI, as prepetition lender, made loans and advances to, issued letters of credit for and/or provided other financial accommodations to or for the benefit of the Debtor from time to time, in the form of a line of credit of up to an aggregate principal amount of $10 million. As of the Petition Date, the balance owed under the Prepetition Note was approximately $8 million. The Debtor has granted the Prepetition Lender a lien on and security interest in the Prepetition

---

[4]     The Debtor is a direct, wholly-owned subsidiary of Crabtree & Evelyn Holdings Limited ("Crabtree & Evelyn Holdings"), a United Kingdom based investment holding company. Crabtree & Evelyn Holdings owns all of the Crabtree & Evelyn foreign trademarks. Crabtree & Evelyn Holdings is a direct, wholly- owned subsidiary of CE Holdings Ltd. ("CE Holdings"), a British Virgin Islands based investment holding company. CE Holdings is a direct, wholly-owned subsidiary of KLKOI. KLKOI is a direct, wholly-owned subsidiary of Kuala Lumpur Kepong Berhad, a Malaysian corporation ("KLK"). KLK is a Malaysian public limited liability company, the stock of which is publicly traded on the Kuala Lumpur stock exchange.

Collateral with respect to all indebtedness, obligations and liabilities of the Debtor to the Prepetition Lender for amounts advanced under the Prepetition Note.

(ii)     Separate and apart from the Prepetition Note, as of the Petition Date, the Debtor is also indebted to KLKOI in the amount of $13,731,528 (together with amounts outstanding under the Prepetition Note, the "Prepetition Obligations").

(iii)     Pursuant to the Prepetition Note, the Debtor was, as of the Petition Date, indebted to the Prepetition Lender on account of the Note Indebtedness (as defined below) exclusive of accrued but unpaid interest, costs, fees and expenses, in the approximate principal amount of $8,000,000. For purposes of this Order, the term "Note Indebtedness" shall mean and include, without duplication, any and all amounts owing or outstanding under the Prepetition Note, and all interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the applicable provisions of the Prepetition Note), and any and all obligations and liabilities, contingent or otherwise, owed in respect of the letters of credit or other obligations outstanding thereunder;

(iv)     Pursuant to the Prepetition Note, the Debtor granted to and/or for the benefit of the Prepetition Lender liens and security interests (the "Prepetition Liens") to secure the Note Indebtedness, in and upon substantially all of the Debtor's property and assets whether personal, tangible or intangible and wherever located, whether now or hereafter existing or acquired, and all the proceeds, products, offspring and profits thereof (the "Prepetition Collateral"); and

(v)     As of the Petition Date and immediately prior to giving effect to this Order, (a) the Prepetition Obligations are valid and binding agreements and obligations of the Debtor, (b) the Prepetition Liens constitute valid, binding, enforceable and perfected priority security interests and liens, which are not subject to avoidance, reduction, disallowance,

recharacterization, impairment or subordination of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (c) no objection, offset, defense or counterclaim of any kind or nature to the Prepetition Obligations exists.

(vi)     The Debtor has waived, discharged and released any right it may have to challenge any of the Prepetition Obligations, including the Note Indebtedness, and the security for any of those obligations, and to assert any offsets, defenses, claims, objections, challenges, causes of action and/or choices of action against the Prepetition Lender and/or any of its affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors and employees.

F.     The Debtor's businesses have an immediate need to obtain the DIP Facility and use Cash Collateral in order to permit, among other things, the orderly continuation of the operation of its businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational, financial and general corporate needs. The access of the Debtor to sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations (including letters of credit and other credit support) and use of Cash Collateral is vital to the preservation and maintenance of the going concern values of the Debtor and to the success of this chapter 11 case. Without such credit and use of Cash Collateral, the Debtor would not be able to operate its businesses and the Debtor's estate would be irreparably harmed.

G.     The Debtor is unable to obtain sufficient financing from sources other than the DIP Lender on terms more favorable than under the DIP Facility and all the documents and instruments delivered pursuant thereto or in connection therewith (inclusive of the DIP Agreement, the "Post-Petition Financing Documents"). The Debtor has been unable to obtain sufficient unsecured credit solely under section 503(b)(1) of the Bankruptcy Code as an administrative expense. New credit is unavailable to the Debtor without (i) providing the DIP

Lender (a) the DIP Facility Superpriority Claims and (b) the DIP Liens as provided herein and in the Post-Petition Financing Documents and (ii) without concurrently providing for the Adequate Protection to the Prepetition Lender on the terms and conditions as set forth herein.

H.     The DIP Lender has indicated a willingness to agree and consent to, and as applicable, provide financing to the Debtor and the Prepetition Lender has agreed to permit the use of Cash Collateral by the Debtor subject to, (i) the entry of this Order, (ii) the terms and conditions of the DIP Agreement, and (iii) findings by the Court that such postpetition financing and use of Cash Collateral is essential to the Debtor's estate, that the terms of such financing and use of Cash Collateral were negotiated in good faith and at arm's length, and that the DIP Liens and Superpriority Claims, and other protections granted pursuant to this Order and the Post-Petition Financing Documents will not be affected by any subsequent reversal, modification, vacatur, or amendment of this Order or any other order, as provided in section 364(e) of the Bankruptcy Code. Each of the DIP Lender and Prepetition Lender has acted in good faith in, as applicable, negotiating, consenting to and in agreeing to provide the postpetition financing arrangements and use of Cash Collateral (or otherwise not opposing such use) contemplated by this Order and the other Post-Petition Financing Documents and the reliance of each of the DIP Lender and Prepetition Lender on the assurances referred to above is in good faith.

I.     Pursuant to the Interim Order, notice of the Final Hearing and the proposed entry of this Order has been provided to (i) the forty (40) largest creditors listed in the Debtor's consolidated list of creditors (excluding insiders), (ii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), (iii) counsel to the DIP Lender and Prepetition Lender (iv) each of the financial institutions listed in the Debtor's Motion for an Order, Pursuant to Sections 105(a), 345(b), 363(c) and 364(a) of the Bankruptcy Code Authorizing the Debtor to (I) Continue to Use Existing Cash Management System, (II) Maintain Existing Bank Accounts and Business Forms, And (III) Waive Requirements of Section 345(b) of

the Bankruptcy Code, (v) all known parties asserting a lien against the Collateral, (vi) the Debtor's landlords; and (vi) any other party that has filed a request for notice pursuant to Bankruptcy Rule 2002 or are required to receive notice under the Bankruptcy Rules. Notice of the Motion and the relief requested thereby and this Order has been provided in accordance with Bankruptcy Rule 4001, which notice is sufficient for all purposes under the Bankruptcy Code, including, without limitation, sections 102(1) and 364 of the Bankruptcy Code, and no other notice need be provided for entry of this Order.

J. The Debtor has requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b) (2) and 4001(c) (2). Absent entry of this Order, the Debtor's businesses, properties and estates will be immediately and irreparably harmed.

K. The ability of the Debtor to finance its operations and the availability to the Debtor of sufficient working capital and other financial and general corporate liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations, including letters of credit and credit support, and use of Cash Collateral is in the best interests of the Debtor and its creditors and estate. The financing and use of Cash Collateral authorized hereunder is vital to avoid immediate irreparable harm to the Debtor's businesses, properties and estates and to allow the orderly continuation of the Debtor's businesses.

L. Based upon the record presented by the Debtor to this Court: (i) the terms of the DIP Facility and use of Cash Collateral are the best available under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duty, and are supported by reasonably equivalent value and fair consideration; and (ii) the DIP Facility and use of Cash Collateral has been negotiated in good faith and at arm's length among the Debtor, the DIP Lender and the Prepetition Lender, and any credit extended, letters of credit issued, loans made, credit support provided and other financial accommodations extended to the Debtor by the DIP Lender and use of Cash Collateral by the Debtor shall be deemed to have

been extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

M.     The consent of the Prepetition Lender granted herein is expressly limited to (i) the Debtor's use of Cash Collateral solely on the terms and conditions set forth in this Order and (ii) the postpetition financing being provided by the DIP Lender as contemplated by this Order and the DIP Agreement. Nothing in this Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Prepetition Lender is or will be adequately protected with respect to any non-consensual use of Cash Collateral or priming of the Prepetition Liens.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.     Disposition. The Motion is granted as set forth in this Order. The total amount of the DIP Facility has been reduced from $40,000,000 to $26,300,000.  Any objections that have not previously been withdrawn are hereby overruled. This Order shall immediately become effective upon its entry.

2.     Authorization to Borrow. Upon execution and delivery of that certain amended DIP Grid Note dated as of June 30, 2009, a copy of which is in substantially the form annexed hereto as **Exhibit A**, and Line Letter of even date (collectively the "DIP Agreement") by and among the Debtor and the DIP Lender, in substantially the form annexed to the Motion and provided that the Debtor is not in default under the terms of this Order, the Debtor is immediately authorized to borrow under the DIP Facility from the DIP Lender (together with interest, fees, charges and expenses payable under the Post-Petition Financing Documents), pursuant to the terms and conditions of the DIP Agreement and use such advances and proceeds in accordance with the terms of the DIP Agreement, the budget annexed hereto as **Exhibit B**, which supplements and modifies the budget previously filed in connection with the Motion (the "Budget"), and this Order. Upon execution and delivery of the Post-Petition Financing Documents, the Post- Petition Financing Documents shall constitute legal, valid, and

binding obligations of the Debtor, enforceable against the Debtor in accordance with their terms. Financing and advances under the DIP Agreement will be made to (i) satisfy the remaining balance under the Prepetition Note in full in cash, (ii) fund the Debtor's working capital and other general corporate needs and (iii) pay such other amounts required or allowed to be paid pursuant to the DIP Agreement, this Order and any other orders of this Court.

3.      DIP Facility Superpriority Claims. For all of the Debtor's Obligations and Postpetition Indebtedness arising under the DIP Facility and the Post-Petition Financing Documents, the DIP Lender is granted, pursuant to section 364(c)(1) of the Bankruptcy Code, subject only to the Carve-Out, the allowed DIP Facility Superpriority Claims which claims shall be payable from and have recourse to, in addition to the Collateral, any unencumbered prepetition or postpetition property of the Debtor whether now existing or hereafter acquired. The DIP Facility Superpriority Claims shall be deemed legal, valid, binding, enforceable, and perfected claims, not subject to subordination, impairment or avoidance, for all purposes in the case and any successor case.

4.      DIP Liens.    As security for the repayment of the Postpetition Indebtedness, pursuant to sections 364(c)(2), (c)(3), and (d) of the Bankruptcy Code, the DIP Lender is hereby granted (without the necessity of the execution by the Debtor or the filing or recordation of mortgages, security agreements, lock box agreements, financing statements, or otherwise) the DIP Liens on and in the Collateral and all proceeds thereof, which liens are valid, binding, enforceable and fully perfected as of the date hereof, not subject to subordination, impairment or avoidance, for all purposes in this chapter 11 case and any successor case. The DIP Liens granted herein shall prime and be senior in all respects to the Prepetition Liens and the Prepetition Replacement Liens (as defined below) pursuant to section 364(d) of the Bankruptcy Code and upon entry of this Order all possessory collateral held by the Prepetition Lender shall be deemed to have been transferred to the DIP Lender. Notwithstanding anything to the contrary in this Order, the Motion, the DIP Agreement, the Post-Petition Financing

Documents, or any other pre-petition or post-petition agreements, (i) the term "Collateral" shall not include the Debtor's leases and leasehold interests themselves, but only the proceeds of such leases and leasehold interests, and (ii) the DIP Lender's DIP Liens shall not include liens on the Debtor's leases and leasehold interests themselves, but only on the proceeds of such leases and leasehold interests. Notwithstanding any other provisions included in the Interim DIP Order, this Final DIP Order, or any other agreements approved hereby, the statutory liens, if any, of the Texas Taxing Jurisdictions (including Tarrant County, Round Rock Independent School District, City of San Marcos, San Marcos Independent School District, City of Mercedes, Mercedes Independent School District, South Texas College, South Texas Independent School District, Smith County, Williamson County and Hays County), shall not be primed by nor made subordinate to any liens granted to any party hereby.

5. <u>Carve-Out</u>. Subject to the terms and conditions contained in this paragraph, the DIP Liens, DIP Facility Superpriority Claim, the Adequate Protection and liens and claims held by the Prepetition Lender shall be subject to the following: (i) unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) and 31 U.S.C. § 3717; (ii) accrued professional fees and expenses of the Debtor and the Committee (the "<u>Professional Fees</u>") incurred to the extent consistent with the Budget, but unpaid, prior to delivery of a notice of an Event of Default (the "<u>Carve-Out Notice</u>"); (iii) Professional Fees incurred subsequent to delivery of the Carve- Out Notice to the extent consistent with the Budget in an aggregate amount not to exceed $200,000; and (iv) the approved professional fees and expenses incurred by any court appointed Chapter 7 Trustee up to an aggregate amount of $25,000 (collectively, (i)–(iv), the "<u>Carve-Out</u>"). The Carve-Out shall exist at all times, but only be triggered and payable upon (i) the occurrence of an Event of Default under the Post-Petition Financing Documents and the DIP Lender's delivery of a Carve-Out Notice to the Debtor, counsel for the Debtor, and counsel to the Committee or (ii) the Maturity Date. Notwithstanding anything herein to the contrary, no Prepetition Collateral, Collateral, proceeds

thereof, or Cash Collateral, or any portion of the Carve-Out or DIP Financing shall include, apply to, or be available for any fees or expenses incurred by any party, including the Debtor or the Committee, in connection with (i) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the DIP Lender, including, without limitation, challenging the amount, validity, extent, perfection, priority, characterization, or enforceability of, or asserting any defense, counterclaim, or offset to the Postpetition Indebtedness, the DIP Facility Superpriority Claim, or the security interests and DIP Liens of the DIP Lender in respect thereof, (ii) asserting any claims or causes of action, including, without limitation, claims or actions to hinder or delay the DIP Lender's or any Prepetition Lender's assertion, enforcement or realization on the Collateral in accordance with the Post-Petition Financing Documents or this Order or any Avoidance Actions against the DIP Lender or Prepetition Lender, or (iii) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the Prepetition Lender, including, without limitation, challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Prepetition Indebtedness, or the Adequate Protection granted herein; <u>provided however</u>, up to the amount of $40,000 shall be permitted to be used by professionals of the Committee to investigate the liens, claims and interests of the Prepetition Lender, with respect to the Note Indebtedness, and a reasonable amount consistent with the Budget shall be permitted to investigate all other Prepetition Obligations. The foregoing shall not be construed as consent to the allowance of any fees and expenses referred to above and shall not affect the right of the Debtor, the DIP Lender, the Prepetition Lender, the Committee, the U.S. Trustee, or other parties in interest to object to the allowance and payment of such amounts. Payment of any portion of the Carve-Out shall not, and shall not be deemed to, (i) reduce any Debtor's obligations owed to the DIP Lender or Prepetition Lender or (ii) subordinate, modify, alter or otherwise affect any of the liens and security interests of such parties in the Collateral or Prepetition Collateral (or their respective claims against the Debtor). During the pendency of this

chapter 11 case, the Debtor shall fund sufficient cash to satisfy the Carve-Out on a monthly basis (the "Carve-Out Reserve") to be held in trust by the Debtor in a segregated account for the benefit of the Professionals, the Clerk of the Court and the U.S. Trustee, to be applied to U.S. Trustee fees when due, the Clerk's fees when payable and to Professional Fees pursuant to one or more orders of the Court, with any excess to be subject to the DIP Liens of the DIP Lender and the Replacement Liens of the Prepetition Lender.

6. Investigation Rights. Notwithstanding anything herein to the contrary, including the Debtor's stipulations and releases herein solely as they relate to the Prepetition Lender, the Committee and all non-debtor parties in interest (including any trustee appointed or elected in the case prior to the Investigation Termination Date (as defined below)) shall have until October 1, 2009 (the "Investigation Termination Date") to investigate the validity, perfection, and enforceability of the Prepetition Liens and the amount and allowability of the Prepetition Obligations, and to file a motion or otherwise seek authorization from the Court to commence, file and prosecute any objection, claim or other adversary proceeding with respect to the Prepetition Liens and/or Prepetition Obligations (collectively, an "Action"). If the Committee, or any non-debtor party in interest, determines that there may be a challenge to the Prepetition Liens and/or Prepetition Obligations, upon three (3) days' written notice to the Debtor, KLKOI and its counsel, and the Prepetition Lender and its counsel, such Committee or other non-debtor party in interest shall be permitted to seek authorization from the Court to commence, file and prosecute an Action, or if vested with authority from the Court, to file and prosecute an Action (each, a "Challenge"), and shall have only until the Investigation Termination Date to (a) file the motion for authorization to file, commence and prosecute any Action, or (b) otherwise seek authorization from the court to file, commence and prosecute any Action, on behalf of the Debtor's estate setting forth the basis of any such challenge, claim or cause of action. If the Committee, or any non-debtor party in interest is granted authorization from the Court to commence, file and prosecute an Action, such party shall have thirty (30) days from entry of a

final order granting such authorization to file and commence an Action (the "Filing Deadline"). If a party does not file a Challenge on or before the Investigation Termination Date (or such other later date as extended by the written consent of the Debtor, KLKOI and the Prepetition Lender), or does not commence an Action on or before the Filing Deadline (or such other later date as extended by the written consent of the Debtor, KLKOI and the Prepetition Lender), then the agreements, acknowledgements, releases and stipulations contained in paragraph E of this Order shall be irrevocably binding on all other parties, the estates, Committee and all parties in interest (including without limitation a receiver, administrator, or trustee appointed in this chapter 11 case or any successor case or in any jurisdiction) without further action by any party or this Court and the Committee and any other party in interest (including without limitation a receiver, administrator, or trustee appointed in this chapter 11 case or any successor case or in any jurisdiction) shall thereafter be forever barred from bringing any Challenge with respect to the Prepetition Lender and KLKOI.  If any Action is timely filed on or before the Filing Deadine, all other claims and actions against the Prepetition Lender and KLKOI not expressly asserted in such Action or amended Action shall be deemed, immediately and without further notice, motion or application to, order of, or hearing before, this Court, to have been forever relinquished, discharged, released and waived. Nothing in this Order (a) confers standing on any party to file or prosecute such claims and actions described herein or (b) precludes the Prepetition Lender from seeking allowance of all or any portion of the Prepetition Obligations prior to the occurrence of the Investigation Termination Date.  If an Action against the Prepetition Lender or KLKOI is successful, the DIP Lender agrees that any such judgment, award or settlement of such Action may be satisfied by reducing the amount of any Postpetition Indebtedness then due and owing under the DIP Facility.  Nothing herein shall relieve the Prepetition Lender and KLKOI of their obligations for such judgment, award or settlement as a result of the Action until such amount is indefeasibly paid in full.

7.    Limitation on Additional Surcharges.  Neither the Collateral, Prepetition Collateral nor the DIP Lender or Prepetition Lender shall be subject to surcharge, pursuant to section 506(c) of the Bankruptcy Code or otherwise, by the Debtor or any other party in interest without the prior written consent of the DIP Lender and Prepetition Lender and no such consent shall be implied from any other action, inaction, or acquiescence by such parties in this proceeding, including but not limited to funding of the Debtor's ongoing operation by the DIP Lender.  The DIP Lender and Prepetition Lender shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral or Prepetition Collateral.

8.    Use of Cash Collateral. Upon the closing and funding under the DIP Facility all Cash Collateral and proceeds of other Collateral shall be tendered to the DIP Lender, for the benefit of the Prepetition Lender and applied against the Prepetition Note. The Debtor shall use advances under the DIP Facility to fund the Debtor's operation of its businesses in accordance with the terms of the DIP Facility.  The Debtor shall use advances under the DIP Facility to pay in full in cash the Note Indebtedness and the Debtor shall have use of Cash Collateral pursuant to the terms of the DIP Agreement.

9.    Prepetition Lender's Adequate Protection. In consideration for the use of Cash Collateral and the priming of the Prepetition Lender's liens, claims and interests in the Prepetition Collateral (solely upon the terms and conditions of this Order), the Prepetition Lender shall receive the following (collectively the "Adequate Protection"):

(a)    To the extent there is a diminution in the Prepetition Lender's interest in the Prepetition Collateral from and after the Petition Date (whether the reason for such diminution is as a result of or from, arises from, or is attributable to, the imposition of the automatic stay, the priming of the Prepetition Liens, the use of Cash Collateral or the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Prepetition Collateral), the Prepetition Lender is granted a replacement lien in the Collateral, subject to the Carve-Out (the "Prepetition Lender Replacement Liens"), which liens are valid,

binding, enforceable and fully perfected as of the date hereof and shall be subordinate only to the DIP Liens;

(b)     Subject to the Carve-Out, an allowed administrative claim (the "Prepetition Lender Administrative Claim") against the Debtor's estate under section 507(b) of the Bankruptcy Code to the extent that the Prepetition Lender Replacement Liens do not adequately protect the diminution in the value of the Prepetition Lender's interest in the Prepetition Collateral, which Prepetition Lender Administrative Claim, if any, shall be junior and subordinate only to the DIP Facility Superpriority Claims; and

(c)     Payments of the Prepetition Lender's reasonable fees and expenses for legal counsel, auditors, financial advisors and other professionals for services rendered prepetition or postpetition; provided that none of such fees and expenses as adequate protection payments hereunder shall be subject to approval by the Court or the United States Trustee Guidelines, but after the closing date of the DIP Facility, such professional shall provide copies of summary invoices and statements to the U.S. Trustee and counsel to the Committee. No recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; provided, however, that the Court shall have jurisdiction to determine any dispute concerning such invoices, and provided, further, however, that such payments shall be provisional in nature, and if and to the extent that any payment(s) is challenged (by a party in interest with standing) under section 506(b) of the Bankruptcy Code and ultimately not allowed under such provision, such payment(s) may be recharacterized as a payment of principal on the indebtedness under the Prepetition Note.

(d)     The Prepetition Lender may petition this Court for any such additional protection it may reasonably require with respect to the Prepetition Note, including, without limitation, its right to request additional adequate protection of their interests in the Prepetition Collateral or the Cash Collateral or relief from or modification of the automatic stay extant under section 362 of the Bankruptcy Code.

10.     Fees and Expenses of the DIP Lender. The Debtor shall promptly following receipt of a written summary invoice, reimburse the DIP Lender for its reasonable out-of-pocket costs, fees (including, without limitation, reasonable attorneys' and financial advisors' fees and expenses), charges, and expenses incurred in connection with the chapter 11 case or under the DIP Facility whether incurred prepetition or postpetition. None of such out-of-pocket costs, fees, charges, and expenses shall be subject to Court approval or required to be maintained in accordance with the U.S. Trustee Guidelines and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court, provided that the Court shall have jurisdiction to determine any dispute concerning such invoices.

11.     Restrictions on the Debtor. Other than the Carve-Out, no claim or lien having a priority superior or *pari passu* with those granted by this Order to the DIP Lender or Prepetition Lender shall be granted by the Debtor, while any portion of the DIP Facility (or refinancing thereof), Adequate Protection or the commitment thereunder remains outstanding without the written consent of the DIP Lender and Prepetition Lender. Except as expressly permitted by the DIP Agreement and this Order, the Debtor will not, at any time during this chapter 11 case, grant mortgages, security interests, or liens in the Collateral or any portion thereof to any other parties pursuant to section 364(d) of the Bankruptcy Code or otherwise.

12.     Additional Perfection Measures. The DIP Lender and Prepetition Lender shall not be required to file financing statements, mortgages, deeds of trust, security deeds, notices of lien, or similar instruments in any jurisdiction or effect any other action to attach or perfect the security interests and liens granted under the Post-Petition Financing Documents and this Order (including, without limitation, the taking possession of any of the Collateral, or the taking of any action to have security interests or liens noted on certificates of title or similar documents). Notwithstanding the foregoing, the DIP Lender and Prepetition Lender may, in their sole discretion, file this Order or such financing statements, mortgages, deeds of trust, notices

of lien, or similar instruments or otherwise confirm perfection of such liens, security interests, and mortgages without seeking modification of the automatic stay under section 362 of the Bankruptcy Code and all such documents shall be deemed to have been filed or recorded at the time of and on the Petition Date, with the priorities set forth herein.

13. <u>Access to Collateral</u>. Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Lender contained in this Order or the Post-Petition Financing Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Agreement, upon emergency application to the Court on five business days notice to the affected landlord, lienholder, licensor or other third party owner of any leased or licensed premises or intellectual property that an Event of Default has occurred and is continuing under the Post- Petition Financing Documents, the DIP Lender may seek, unless such access is controlled by any separate agreement by and between such landlord or licensor and the DIP Lender in which case the separate agreement will control (the "<u>Separate Agreement</u>"), Court approval to enter upon any leased premises of the Debtor for the purpose of exercising any remedy with respect to Collateral located thereon and may seek further authorization that it shall be entitled to all of the Debtor's rights and privileges as lessee under such lease or licensee or under such license without interference from the landlords or licensor thereunder, with Court authorization that the DIP Lender shall only pay rent or royalties of the Debtor that first accrue after the DIP Lender's written notice referenced above and that is payable during the period of such occupancy or use by the DIP Lender as the case may be, calculated on a per diem basis. Nothing herein shall require the DIP Lender to assume any lease or license as a condition to the rights afforded to the DIP Lender in this paragraph nor shall anything be construed as authorizing the commencement of "going out of business" sales on shortened notice. The rights of any affected landlord to object to any of the relief the DIP Lender may seek pursuant to this paragraph 13 are reserved.

14.  Automatic Stay.  (a)  Subject only to the provisions of the DIP Agreement and without further order from this Court, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Lender to exercise, upon the occurrence and during the continuance of any Event of Default (as defined and provided for in the DIP Agreement), all rights and remedies provided for in the Post-Petition Financing Documents (including, without limitation, the right to freeze monies or balances in the Debtor's accounts or set off monies or balances of the Debtor in accounts maintained by the DIP Lender, the right to charge default rate of interest, terminate commitments and cease funding under the DIP Agreement and termination of any Cash Collateral use); provided, however, that prior to the exercise of any enforcement or liquidation remedies against the Collateral, the DIP Lender shall be required to give five (5) business days prior written notice to the Debtor, its bankruptcy counsel, the Committee's counsel, the Prepetition Lender and the U.S. Trustee. Notwithstanding the occurrence of an Event of Default or termination of the commitments under the DIP Agreement or anything herein, all of the rights, remedies, benefits, and protections provided to the DIP Lender under the Post-Petition Financing Documents and this Order shall survive the Maturity Date. The Debtor and/or the Committee shall have the initial burden of proof at any hearing on any request by the Debtor and/or the Committee to re-impose or continue the automatic stay as provided for herein; provided, however, that the only issue to be determined at such hearing is whether an Event of Default has occurred and is continuing. This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, re-imposition or continuance of the automatic stay as provided hereunder.

(b)     In the event the DIP Lender commences the exercise of any enforcement or liquidation remedies against the Collateral consistent with the terms of the DIP Agreement, the automatic stay provisions of section 362 of the Bankruptcy Code shall be

vacated and modified to the extent necessary to permit the Prepetition Lender to exercise all rights and remedies provided for in the Prepetition Note and the Prepetition Obligations.

15. <u>Binding Effect</u>. The provisions of this Order shall be binding upon and inure to the benefit of the DIP Lender, the Prepetition Lender, the Debtor, and their respective successors and assigns, including any trustee hereafter appointed for the Debtor's estate, whether in this chapter 11 case or in the event of the conversion of the case to a liquidation under chapter 7 of the Bankruptcy Code. Such binding effect is an integral part of this Order.

16. <u>Survival</u>. The provisions of this Order and any actions taken pursuant hereto shall survive the entry of any order (i) confirming any plan of reorganization in any of the Case (and, to the extent not satisfied in full in cash, the postpetition indebtedness shall not be discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor has hereby waived such discharge); (ii) converting the chapter 11 case to a chapter 7 case unless permitted under the Post-Petition Financing Documents; or (iii) dismissing the chapter 11 case unless permitted under the Post-Petition Financing Documents, and the terms and provisions of this Order as well as the DIP Facility Superpriority Claims, the DIP Liens, and the Adequate Protection granted pursuant to this Order and/or the Post-Petition Financing Documents shall continue in full force and effect notwithstanding the entry of any such order, and such claims and liens shall maintain their priority as provided by this Order, and the Post-Petition Financing Documents and to the maximum extent permitted by law until all of the Postpetition Indebtedness is indefeasibly paid in full in cash and discharged.

17. <u>After Acquired Property</u>. Except as otherwise provided in this Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtor after the Petition Date, including, without limitation, all Collateral pledged or otherwise granted to the DIP Lender, pursuant to the Post-Petition Financing Documents and this Order, is not and shall not be subject to any lien of any person or entity resulting from any security agreement entered into by the Debtor prior to the Petition Date, except to the extent that such property constitutes

proceeds of property of the Debtor that is subject to a valid, enforceable, perfected, and unavoidable purchase money security interest lien as of the Petition Date which is not subject to subordination under section 510(c) of the Bankruptcy Code or other provision or principles of applicable law.

18.     Access to the Debtor. In accordance with the provisions of access in the Post-Petition Financing Documents, the Debtor shall permit representatives, agents, and/or employees of the DIP Lender and its counsel to have reasonable access to its premises and records during normal business hours (without unreasonable interference with the proper operation of the Debtor's businesses) and shall cooperate, consult with, and provide to such representatives, agents, and/or employees all such information as they may reasonably request.

19.     Authorization to Act. The Debtor is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of security agreements, mortgages and financing statements), and to pay interest, fees and all other amounts as provided under this Order and the DIP Facility, which may be reasonably required or necessary for the Debtor's full and timely performance under the DIP Facility and this Order, including, without limitation:

(a)     the execution of the Post-Petition Financing Documents;

(b)     the non material modification or amendment of the DIP Agreement or any other Post-Petition Financing Documents without further order of this Court, in each case, in such form as the Debtor and the DIP Lender may agree in accordance with the terms of the DIP Facility; provided, however, that notice of any material modification or amendment (including any waiver of any Event of Default) shall be provided to counsel for the Committee, the Prepetition Lenders and the U.S. Trustee, each of which will have five (5) days from the date of delivery of such notice within which to object in writing; provided further, however, that if such objection is timely provided, then such modification or amendment shall be permitted only pursuant to an order of the Court; and

(c)     the non-refundable payments to the DIP Lender of the fees referred to in the DIP Agreement and reasonable costs and expenses as may be due from time to time, including, without limitation, reasonable attorneys' and other professional fees and disbursements as provided in the Post-Petition Financing Documents.

20.     <u>Insurance Policies</u>. Upon entry of this Order, the DIP Lender shall be, and shall be deemed to be, without any further action or notice, named as an additional insured and loss payees on each insurance policy maintained by the Debtor which in any way relates to the Collateral.

21.     <u>Subsequent Reversal</u>. If any or all of the provisions of this Order or the Post-Petition Financing Documents are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court: (i) such modification, vacatur, amendment, or stay shall not affect the validity of any obligation of any Debtor to the DIP Lender or Prepetition Lender that is or was incurred prior to such party receiving written notice of the effective date of such modification, vacatur, amendment, or stay (the "<u>Effective Date</u>"), or the validity, enforceability or priority of the DIP Facility Superpriority Claim, DIP Liens, Adequate Protection or other grant authorized or created by this Order and the Post-Petition Financing Documents; and (ii) the Postpetition Indebtedness and Adequate Protection pursuant to this Order and the Post-Petition Financing Documents arising prior to the Effective Date shall be governed in all respects by the original provisions of this Order and the Post-Petition Financing Documents, and the validity of any such credit extended or security interest granted pursuant to this Order and the Post-Petition Financing Documents and use of Cash Collateral is and shall be protected by section 364(e) of the Bankruptcy Code.

22.     <u>Effect of Dismissal of Case</u>. If the chapter 11 case is dismissed, or converted, then neither the entry of this Order nor the dismissal or conversion shall affect the rights of the DIP Lender and the Prepetition Lender (to the extent of Adequate Protection provided hereunder) under their respective documents or this Order, and all of the respective

rights and remedies thereunder of the DIP Lender and the Prepetition Lender (to the extent of Adequate Protection provided hereunder) shall remain in full force and effect as if the case had not been dismissed or converted. If an order dismissing this chapter 11 case is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (i) the DIP Liens and DIP Facility Superpriority Claim granted to and conferred upon the DIP Lender and the protections afforded to the DIP Lender pursuant to this Order and the Post-Petition Financing Documents shall continue in full force and effect and shall maintain their priorities as provided in this Order until all postpetition indebtedness shall have been paid and satisfied in full in cash and, with respect to outstanding undrawn letters of credit, cash collateralized in accordance with the provisions of the DIP Agreement (and that such DIP Liens, DIP Facility Superpriority Claim and other protections shall, notwithstanding such dismissal, remain binding on all interested parties), (ii) the Adequate Protection granted to and conferred upon the Prepetition Lender shall continue in full force and effect and shall maintain their priorities as provided in this Order until such Adequate Protection has been satisfied, (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Liens, Prepetition Liens, DIP Facility Superpriority Claim, and Adequate Protection referred to herein, and (iv) any hearing on a motion to dismiss the chapter 11 case shall require at least twenty (20) days prior notice to the DIP Lender and Prepetition Lender.

23.     Findings of Fact and Conclusions of Law. This Order constitutes findings of fact and conclusions of law based upon facts now extant and fully disclosed and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon the entry thereof, subject to modifications by a party or parties in interest for cause shown.

24.     Controlling Effect of Order. To the extent any provision of this Order conflicts with any provision of the Motion, any prepetition agreement or any document executed in connection with the DIP Facility, the provisions of this Order shall control.

25.     Notice of the Final Hearing was given pursuant to the Interim Order and

as such is appropriate notice.

Dated:  New York, New York
        July 31, 2009

                                        **/s/Burton R. Lifland**
                                        The Honorable Burton R. Lifland
                                        United States Bankruptcy Judge